IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CT-3031-H

| JAMES ALLEN HOOKS., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| CAPTAIN ARCHIE BRUTON, et al., | ) | |
| Defendants. | ) | |

James Allen Hooks, a state inmate, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Defendants have filed motions for summary judgment and Plaintiff has failed to respond. Also before the court are Plaintiff's motions for appointment of counsel, motion to subpoena medical records, and motion for a preliminary injunction or for order to show cause. These matters are ripe for disposition.

## STATEMENT OF FACTS

During all times relevant to this case, Plaintiff was a pretrial detainee at Lenoir County Jail. According to Plaintiff, on March 28, 2006 at approximately 8:30 a.m. he experienced the "onset of a stroke." He claims he vomited at least four times and that he experienced rapid blinking as well as pressure on the left side of his head. He further states that his throat constricted and that the right side of his body felt dead. Plaintiff claims his speech was slurred and that his face was distorted. He claims the jailers took him to the nurses station because he was unable to walk. At the nurses' station, he states that Nurse Rogers gave him two pills and told the jailers to take him back to his cell. He claims that Nurse Rogers came up behind them as the jailers were returning him to his cell and ordered the jailers to let him go because he was able to walk. He states that the jailers continued

to return him to his cell. He avers that before he reached his cell he regurgitated the pills. Plaintiff claims that the jailers then put him on his bunk and left him there. Plaintiff alleges he was left in his cell for six hours, until he was handcuffed around 1:30 p.m. to be transported to a mental health clinic.

Plaintiff was transported to Lenoir Memorial Hospital where he was treated. He claims the doctor told him if he continued to experience the symptoms in two days to return to the hospital. Plaintiff alleges that he informed Nurse Rogers about the doctor's instruction.

Plaintiff states that he submitted a sick call request on April 2 or 3, 2006, letting Nurse Rogers know that the condition still existed. He claims the sick call request was ignored. Plaintiff states that he submitted several requests seeking medical care, but they were ignored until April 11, 2006. According to Plaintiff, on that day he was taken to the nurses' station by the jailers. He states that he asked if he was the only one concerned about his health and Nurse Rogers responded, "'[y]es, and cut the act.'" Plaintiff claims he asked the jailers to return him to his cell because he knew he would not receive any help.

Plaintiff alleges he was not able to walk without assistance. He states that he was left in this condition until June 14, 2006, when he was transported to Dorothea Dix Hospital ("Dix"). After having an MRP and an MRA, Plaintiff claims that the Dr. Santeramo told him that he suffered a stroke and "had brain cell death." He states that he had to lean on walls and chairs to move around at Dix.

Plaintiff states that he was discharged from Dix on June 30, 2006 and returned to the jail where he was placed on medical lock down. He claims he remained in medical lock down until November 1, 2006. During this time, Plaintiff alleges he had to move about by pulling himself along

2

the walls.

Plaintiff alleges he continues to suffer neurological difficulties, loss of motor skills, balance and coordination, numbness in his right side, and other symptoms because Nurse Rogers failed to treat him. Plaintiff contends that Nurse Rogers and Captain Archie Bruton are responsible for his failure to receive proper medical care at Lenoir County Jail. Defendants deny that they violated Plaintiff's constitutional rights.

## LEGAL STANDARD

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 587.

## DISCUSSION

During his stay at Lenoir County Jail, Plaintiff was a pretrial detainee, whose conditions of confinement are evaluated under the Due Process Clause of the Fourteenth Amendment. See Bell

v. Wolfish, 441 U.S. 520, 535, n. 16 (1979). Where conditions of confinement are at issue, the Due Process analysis under the fourteenth Amendment is the same as that under the Eighth Amendment. See Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997). The deliberate indifference to an inmate's serious medical needs violates the prohibition against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). Mere malpractice or negligence in diagnosis or treatment does not state a constitutional claim. See Id. At 105-06; Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998). Moreover, no claim is stated due to disagreements between an inmate and a medical professional, see Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975), unless exceptional circumstances are alleged, Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Medical records show that Plaintiff was screened at the jail on January 1, 2006. Roger's Aff., Ex. 1. At this time it was noted that Plaintiff used alcohol excessively, that he had high blood pressure, and that he had mental health problems. Id. Plaintiff was admitted to Cherry Hospital on January 5, 2006. Id., Ex.2. According to the "Initial Comprehensive Assessment" Plaintiff has a history of hypertension. Id. The discharge summary listed a reason for the admission was Plaintiff's refusing to take his medication. Id.

After he returned to the jail, on January 26, 2006, Plaintiff was referred to medical because he was refusing to take his high blood pressure medicine. Id., Ex. 7. Dr. Spader explained to Plaintiff the serious consequences of not taking his medicine. Id., Ex. 8. The doctor determined that Plaintiff's blood pressure was high enough to send him to the emergency room at Lenoir Memorial Hospital. Id. When his blood pressure was taken at the hospital it was 190/115. Id. Plaintiff was transferred to Cherry Hospital on January 27, 2006 and remained there until his discharge on February 1, 2006.

4

On February 6, 2006, Plaintiff submitted a sick call request concerning a gash over his eye. In that sick call request Plaintiff stated the he "might need to sue." Id., Ex. 11. Nurse Rogers evaluated Plaintiff's eye. At this visit, Plaintiff's blood pressure was 173/122. Id.

On February 7, 2006, Plaintiff was transferred to Central Prison for safekeeping, in part due to his refusal to take his hypertension medication. Id., Ex. 12. He remained there until March 1, 2006. Id. In the discharge summary from Central Prison, it is noted that Plaintiff stated that he stopped taking his blood pressure medicine on February 4, 2006, and he acknowledged that he had done this before and was sent to Cherry Hospital where he immediately began taking his medicine. Id.

When Plaintiff returned to the jail, he submitted a sick call request to see a doctor. Nurse Rogers evaluated him on March 13, 2006 at which time his blood pressure was 172/108. Plaintiff refused to take his blood pressure medicine, stating that "'Dr. Leven told him he was cured'" of high blood pressure. See Id., Ex. 13.

On March 27, 2006, Plaintiff submitted a sick call request stating that his head hurt on the right side, behind his eye. Id., Ex. 14. He also indicated that he could not swallow or speak clearly, and that he could not walk. Id. Nurse Rogers evaluated Plaintiff and noted that his blood pressure was 205/120. It was noted that he had refused to take his blood pressure medicine for 21 days. Nurse Rogers saw Plaintiff again on March 28, 2006, at which time Plaintiff apparently agreed to take his medication. Id., Ex. 15. Nurse Rogers spoke with Dr. Adams regarding Plaintiff and received orders for Plaintiff to be seen at mental health. Id. An appointment was made for 1:00 p.m. that same day. Id. Plaintiff was seen by Dr. Spader, who referred Plaintiff to the Lenoir Memorial Hospital emergency room.

5

The emergency room notes indicated that Plaintiff had refused to take his blood pressure medication. Id., Ex. 16. He indicated that he did not think he needed to take it anymore. Id. The emergency room examine showed that Plaintiff's blood pressure was 159/83 and the doctor who examined him stated that because his blood pressure was "not very elevated" he did not think the headache was related. Id.

According to the progress notes, Plaintiff was seen by Nurse Rogers again on March 30, 2006, at which time he was refusing to take a prescribed medication. Nurse Rogers states that Plaintiff was evaluated again on April 3, 2006, at which time his blood pressure was 210/113 and he complained of a headache and blurred vision.

Plaintiff was evaluated by Dr. Adams on April 5, 2006. Id., Ex. 18. Apparently, Plaintiff was complaining about bilateral arm parenthesis. See id.. However, the results of the neurological examination were normal. Id.

On May 5, 2006, Nurse R. Stephens' progress note shows that Plaintiff continued to refuse his medications. Id., Ex. 19. The note shows that he acknowledged his understanding of the risk associated with not taking his medicine. Id.

Medical records show that Plaintiff continued to refuse his medication after he was transferred to Dix on June 114, 2006. See id., Ex. 20.

Based on Plaintiff's medical history up to and including the time of the alleged incident on March 28, 2006, as well as for the months following the incident, it is clear that Plaintiff received extensive medical care. On numerous occasions prior to March 28, 2006, Plaintiff had refused to take the medication prescribed to control his blood pressure. On March 28, 2006, when Plaintiff reported to sick call, Nurse Rogers evaluated him and warned him of the consequences of not taking

6

his medication. She contacted Dr. Adams and arranged for Plaintiff to be seen by mental health. Dr. Spader, at Eastpointe Mental Health Clinic, then referred Plaintiff to Lenoir Hospital emergency department, the same day. Although Plaintiff states that he was not able to obtain help for his condition, the medical records provide facts to the contrary. Based on these records, Plaintiff's health care was impeded by his own refusal to take his medication. This appears to have been an effort, on Plaintiff's part, to manipulate the system, a conclusion arrived at by those who treated Plaintiff at Dix after evaluating him and reviewing his history. See id., Ex. 23, p. 11. The record shows that Plaintiff was evaluated by Nurse Rogers and referred to doctors for treatment on numerous occasions while housed at Lenoir County Jail.

## CONCLUSION

Based on the foregoing, the undersigned concludes that Nurse Rogers was not deliberately indifferent to Plaintiff's serious medical needs. In addition, Plaintiff has not provided any facts demonstrating that Captain Archie Bruton was involved in his medical care or that he was deliberately indifferent to known violations of Plaintiff's constitutional rights. Accordingly, for the reasons stated above, Defendants' motions for summary judgment are GRANTED and this action is DISMISSED. All other pending motions are DENIED.

SO ORDERED this 20th day of August 2008.

MALCOLM J. HOWARD
Senior United States District Judge

nem